ROBERT L. BLAND, Judge.
Achilles T. Robison, a former city mail carrier at New Mar-tinsville, seeks in this case an award of $26,988.35, and bases his claim on alleged negligence of the state board of control and the state road commission, their officers and employees, in allowing a convict with a dangerous criminal record to be transferred from the penitentiary at Moundsville to a prison road camp, and escape therefrom and attack and do him great bodily injury.
Claimant, who resides in the country, about one mile from New Martinsville, the county seat of Wetzel county, further elucidates his claim by saying that in the afternoon of May 6, 1944, after concluding his duties as a mail carrier on that day, he went to his home; and, his wife and son being absent, he secured a key to his residence and entered the house, where he was confronted by one James Clark, alias James McCune, alias Joseph Kurosi. Clark had in his possession a double-barreled, 12-gauge shotgun, the property of claimant. With this gun he deliberately shot claimant in both of his legs. He then demanded and obtained what money claimant had in his possession and *67 drove away in claimant’s Buick automobile. Claimant was taken to the hospital at New Martinsville, where his wounds were cleansed and he was given blood plasma and a blood transfusion. Thereafter it was found necessary to amputate his right leg. After this was done gangrene set in and it was found expedient to perform a second amputation of the limb.
Claimant was forty-six years of age at the time he was shot by Clark and was earning $185.00 per month. His injuries are such that he will never be able to resume the duties of a city mail carrier. As a result of the injuries inflicted upon him he has lost the benefit of his employment in which his salary would have increased at intervals. He has incurred heavy expenses in surgical, hospital and home treatment; and, although he has procured an artificial limb, there are shots in his knee that render the use of it exceedingly uncomfortable.
Claimant submits an estimate of the co~ts which have been and will be incurred by him due to the injuries inflicted upon him by Clark, as follows:
Dr. J. O. Theiss_ _ $ 200.00
Miss Imogene Thomas, registered nurse . 230.00
Mrs. Clyde Clegg, R.N., New Martinsville 12.00
Miss Rosamond Tiber, registered nurse . 217.00
Wetzel County Hospital_ _ 517.60
Penicillin from Ohio Valley Hospital 92.75
lama ambulance _ ... 7.00
Loss of time from May 6, to July 15, 1944 _ ... 362.00
Estimated cost of artificial limb __ 200.00
Estimated cost of reshaping leg __ 150.00
Loss of Leg_ __ .. 25,000.00
$26,988.35
Claimant’s testimony relates to his injuries and nothing stated by him sheds any light upon the circumstances attending the escape of Clark from the prison road camp.
The state has entered. a general denial of responsibility or liability, and contests the right of claimant to an award. It denies *68 the negligence imputed to it, and it therefore becomes necessary for claimant to prove by a preponderance of evidence the negligence on which he relies to support his claim. To do this claimant demanded the production by the state of Clark’s criminal record. This demand was promptly complied with and the following record produced:
"For
(PHOTOGRAPH)
(a front and side view)
West Virginia Penitentiary 32745
Marks and Scars: Small scar right shoulder. Tatts: Skull with 2 bars above and Death Before Dishonor below, right lower outer arm, question mark, right middle finger. Tattoo heart on chest, with initial Pop and Mom. Small heart with cross and number 13 below left shoulder. Spread eagle with U. S. Marine Corps and L. K. in body of eagle. Scroll with name Lena and two dice below. Dim Tatt: I'itial J. G. below left lower outer arm.
CONDUCT RECORD

Date No. Rep. Offense Penalty

2- 6-43 1 Escape Huttonsville, 1-24-43 6 Mos. Red Si White. All G. T. L. Hold for Crt.
3-24-43 Unnecessary Noise on RSiW. 3 Days Guard House.
3-26-43 Destroying State Blanket 5 Days Guard House.
6- 5-43 Creating Disturbance in Cage After the Lights Were Out 5 Days Guard House.
6- 7-43 5 Creating Disturbance on Red Si White for Three Nights 5 Days Guard House.
8-26-43 Thowing Medicine in Spit Can 5 Days Guard House.
3-23-44 Possession of Sweater Charged to Floyd Larch No. 31741 2 Days Guard House.
6-13-44 8 Escapi g from Road Camp No. 80 5-4-44 6 Mos. Red Si White. All G. T. L. Hold for Court.
7-17-44 9 8-20-44 10 Sleeping in on Morning Count Writing to Party, Claiming Her To Be His Sister When She Is Not 2 Days Guard House. 30 Days Writing Privilege.

*69

*70 Arr. Vernon, Texas 4-25-42 for Fed. Auths. Rel. Authorities Wichita Falls, Texas, Impersonating a U. S. Marine Officer, Trans, to Dallas, Texas. Subject Wanted as a Deserter from U. S. Marines. Admits: Boys Ind. Sch. Lancaster, Ohio, 1939, Auto Theft, Indef. Term 2 Years. Paroled to Join U. S. Marines. Admits Arr: Hudson, Ohio, 1939 BS5E. Given I Year Prob. Violated. Admits Arrested Cleveland, Ohio, Several Times for Misdeameanors.”
David Hinerman, a guard at the West Virginia penitentiary at Moundsville, called as a witness by claimant, testified that on one occasion he “heard James Clark make the remark that if he got out right away he would try to go straight and behave himself, and if he had to serve ten years he would shoot everybody who got in his way,” and that similar remarks were frequently made by prisoners at the institution. Clark was at that time serving a sentence of from one to ten years for “breaking and entering.” This was about two months before Clark was sent from the prison to the prison road camp at Reedy, West Virginia.
Claimant also produced Carl F. Montgomery, captain of the guard at camp 80, the only armed prison labor camp in the state. He testified that on May 4, 1944, James Clark, an'inmate of the penitentiary, who had been transferred to prison labor camp No. 80, was one of three prisoners who escaped from this camp on May 4, 1944. He stated that W. E. Phalen was guard on duty when these escapes were effected, and that he had never before lost a prisoner. Witness also testified as to the general efficiency, watchfulness and reliability of Phalen as a guard. He expressed the opinion that Phalen was guilty of no dereliction of du'y in the escape of Clark from the quarry at which he was working.
The foregoing is a substantial summarization of the evidence adduced and relied upon by claimant to establish a prima facie right to have 'he Court of Claims recommend to the Legislature an appropriation in payment of his claim.
To meet and rebut the charge of negligence in allowing the escape of Clark from the prison labor camp, H. H. Cottle, deputy warden of the penitentiary, Carl F. Montgomery, captain of *71 the guard at Camp 80, R. M. Coiner, chief road guard, William E. Phalen, guard on duty at the time of the escape oí Clark, Lloyd E. Phillips, guard at camp 80, Berton Blake, guard at the same camp, Clinton H. Hill, quarry foreman of the prison labor division of the state road commission, and William Willoy, another guard in the same division, were called by the state as witnesses.
In the opinion in the case of Claim No. 228, Johnson v. State Road Commission, 2 Ct. Claims (W. Va.) 203, it is said:
“It is provided by statute in West Virginia that all male persons convicted of felony and sentenced to imprisonment or confinement in the penitentiary, or so many thereof as may be required by the state road commissioner, shall, as incident to such sentence or confinement, constitute the state road force, and as such may be employed under the supervision of the state road commissioner in building, surfacing and maintaining roads under the supervision of the state road commissioner, code, chapter 17, article 5, section 1.
“The warden of the penitentiary prepares for the state road commissioner a monthly report which shows the names of not less than five hundred inmates of the penitentiary who are suitable fox road work. From said list the road commissioner selects the number needed for road work, Supra, sec. 2.”
Under authority of law in such case made and provided the state road commission maintains a prison labor camp at Reedy, in Wetzel county. There have been as many as 205 convicts from the penitentiary there at one time. All of these men were persons who have been convicted on charges of felony and sentenced to confinement in the penitentiary. James Clark was one of the convicts transferred from the penitentiary to the prison labor division of the state road commission. He was so transferred under lawful authority. A quantity of rocks had been quarried at Hill’s quarry. Clark was one of ten convicts sent from- camp 80 to this quarry to load these rocks into dump trucks, to be taken out on the road to knapping crews. William *72 E. Phalen was assigned as guard over the men. He had been a prison guard for approximately three years. He was stated to be an exceptionally good guard. Prior to May 4, 1944, he had “never lost a man.”
The face of Hill’s quarry is three hundred feet in width. Its height is approximately seventy-five feet. The stones which had been taken from the quarry were stacked in piles on three sides. The piles on the quarry side were so built as to leave a small passageway between the face of the quarry and the long stone pile. The stones were of such size that the prisoners could lift them and place them in the trucks. The stone piles on the face of the quarry side were as “high as a man’s head.” They precluded a view of the passageway between the row of rocks and the face of the quarry. Two dump trucks were being used. Guard Phalen was stationed straight in front of the trucks, and about thirty feet from where the prisoners were working. The guard was armed with a sawed-off shotgun. The prisoners were “bunched” around the trucks. Phalen caused the prisoners to begin the loading of the stones from the right-hand side of the rows of stones. When these rocks had been removed by the trucks the prisoners worked from the right side of the pile in front of the face of the quarry toward the left. While the convicts loaded the truck Phalen could not see the passageway between the long row of stones and the face of the quarry. When behind the truck where they could not be seen, the prisoners removed a sufficient number of stones to effect an entrance to the passageway between the row of stones and the face of the quarry, and in that way Clark and two other prisoners made their escape. The guard explains their action in these words: “So, while these men were picking up stones from the pile on the ground and loading them into the dump trucks three of them got through an opening that they had made by loading the stone into the truck.” The guard could not reasonably have seen the men behind the truck.
When the escape of the men was discovered guard Phalen directed a truck driver to go to the camp and notify the captain of the guard as to what had occurred. State police and other officials *73 were given immediate notice and a prompt search was made to apprehend the convicts.
The evidence as a whole refutes the charge of negligence. Majority members of the court therefore find the state free from negligence and dismiss the claim. Judge Schuck will file a dissenting opinion.